OPINION.
{¶ 1} Defendant-appellant Lula Francis appeals from her conviction and sentence for Felonious Assault. She contends that her conviction is not supported by the evidence, and is against the manifest weight of the evidence. She further contends that the trial court erred by denying her request for an instruction on the defense of self-defense. She also contends that the trial court erred by denying her motion for a mistrial and a judgment of acquittal, made before any testimony was taken, based upon the failure of recording equipment to have made a recording of the preliminary hearing testimony of the complaining witness. Finally, she contends that the trial court erred by admitting, over her objection, photographs of the victim's injuries.
 {¶ 2} We conclude that there is evidence in the record to support the conviction, and that the conviction is not against the manifest weight of the evidence. We conclude that no reasonable finder of fact would have found the serious physical injuries inflicted upon the victim to have been reasonably necessary in the defense of the defendant, so that an instruction on the defense of self-defense was not warranted. We conclude that the failure of recording equipment to have recorded the preliminary hearing testimony of the complaining witness did not entitle Francis to a judgment of acquittal, so that the trial court did not err by denying Francis's motion for a judgment of acquittal. Finally, we conclude that the trial court did not abuse its discretion by admitting, over objection, photographs of the victim's injuries, because they were reasonably necessary to prove both the element of serious physical harm, and, inferentially, the State's theory that Francis inflicted the injuries with a box cutter. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} On an August evening in 2001, a verbal conflict between two mothers erupted into physical violence, resulting in one mother, Lashanna White being seriously injured, and the other, Lula Francis, being convicted of Felonious Assault.
 {¶ 4} The altercation between the two women appears to have had its origin in concerns that each had about the treatment of their respective children. After the initial confrontation that August evening, when White was walking home with her children, she became aware that her ten-year-old son, Terry Holt, was without his shoes. Terry told his mother that Francis had his shoes. White went back to Francis's house, and confronted Francis. Francis denied having the shoes. White then went home with her children.
 {¶ 5} About a half hour later, White, her live-in boyfriend, Shawn Norman, and the children heard a thump outside their home. Upon investigating, they discovered Terry Holt's shoes, one smoking, and one on fire, outside. They saw a woman they identified as Francis walking away, with two other women.
 {¶ 6} This incensed White. Her boyfriend, Norman, attempted to calm her down, suggesting that this was a matter to be handled by the police. White could not be calmed, but took off toward Francis's house.
 {¶ 7} All the witnesses to the final confrontation agree that once the two women were in close proximity, a fight ensued almost immediately. The State's witnesses to the fight included White, her son, Terry Holt, and her 16-year-old cousin, Ciera White. They all testified that during the fight, no one else was in close proximity to the combatants. They also all testified that they were not aware that either woman was armed with a weapon, although Francis had her arms behind her back at the beginning of the fight, and was swinging them wildly during the fight.
 {¶ 8} Three witnesses to the fight testified on Francis's behalf. These were Francis and two acquaintances, Sabrina Johnson and Donella North. Although the testimony of all three of these witnesses differed in some significant respects, they all testified that at least one of White's children, Terry Holt, was in the midst of the fight. North did not see anyone armed with a weapon, or acting like they had a weapon at hand. Johnson testified that Terry Holt had a small blade in his hand. Francis testified that Terry Holt had something shiny in his hand, and that during the fight he ran across behind her and slashed her finger. Francis sustained a cut to her left thumb and to her right hand.
 {¶ 9} None of Francis's witnesses observed any injury to White, before, during or after the fight. Johnson testified that she was a nursing assistant, that White did not have, after the fight, the injuries shown in photographs received in evidence at the trial, and that she, Johnson, would have "addressed" those injuries, had she seen them.
 {¶ 10} White, herself, was not aware of the extent of her injuries, until immediately following the fight, when she realized that she was bleeding profusely. White sustained several lacerations to one arm, her chin, and the upper part of her head. These all required medical treatment, and are illustrated in photographs received in evidence at the trial.
 {¶ 11} Police responded to the scene within minutes. A box cutter was found on the grass, near where the fight occurred. There was blood on the box cutter, which was identified, by DNA analysis, as having come from White. No usable fingerprints were found on the box cutter. White, her son, Terry Holt, and Francis all denied having access to a box cutter.
 {¶ 12} Francis was arrested and charged with Felonious Assault. Following a jury trial, she was convicted, and sentenced accordingly. From her conviction and sentence, Francis appeals.
 II {¶ 13} Francis's First Assignment of Error is as follows:
 {¶ 14} "The evidence against the appellant is insufficient as a matter of law and her conviction is against the manifest weight of the evidence."
 {¶ 15} Francis was convicted of Felonious Assault, in violation of R.C. 2903.11(A)(1), which provides as follows:
 {¶ 16} No person shall knowingly do either of the following:
 {¶ 17} "(1) Cause serious physical harm to another. . . ."
 {¶ 18} There is no dispute in this case that the injuries White had when she was admitted to the hospital constituted serious physical harm. The dispute is whether Francis inflicted those injuries.
 {¶ 19} The State's proof is circumstantial, since no one saw the injuries being inflicted. The testimony of the State's eyewitnesses, if believed, would persuade a reasonable juror, beyond reasonable doubt, that Francis inflicted the injuries with the box cutter. White became aware of her injuries immediately following the fight, and no one was present, in a position to inflict the injuries, during the fight, other than White and Francis. This testimony, corroborated by Terry Holt and Ciera White, together with the presence of the box cutter, with White's blood on the blade, in the vicinity shortly after the fight, would persuade any reasonable juror choosing to believe the testimony of these witnesses, beyond reasonable doubt, that Francis inflicted the injuries. Thus, there is sufficient evidence to support the conviction. State v.Jenks (1981), 61 Ohio St.3d 259, paragraph 2 of the syllabus.
 {¶ 20} In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380. We have reviewed the entire transcript of the trial testimony, and we are satisfied that in resolving the conflicts in the evidence, the jury did not lose its way.
 {¶ 21} There were conflicts in the evidence, and the jury was required to resolve them. Conflicts in the testimony of the State's eyewitnesses tended to involve collateral matters. For example, Norman, the victim's live-in boyfriend, disagreed with where Terry Holt, the victim's son, was when the thump against the side of their house was heard. But the testimony of the State's eyewitnesses to the fight, Lashanna White, Terry Holt and Ciera White, was consistent on the important details. All agreed that no one else was present in the immediate vicinity of the fight besides Lashanna White and Francis, and all agreed that no weapon was seen in anyone's hand, but that Francis had her hands behind her back at the beginning of the fight, and was waving her arms wildly during the fight.
 {¶ 22} By contrast, the testimony of Francis's witnesses to the fight differed in important respects. Johnson testified that Terry Holt, White's ten-year-old son, was in the middle, between White and Francis, during the fight, was holding his hands like he was holding something, and was swinging his arms, in a slicing motion, while White and Francis were trading punches. North, on the other hand, did not see the women punching each other, with Terry Holt in between. According to North, the two women were on the ground, struggling, while the boy was hitting and kicking at them. North never saw anything in Terry Holt's hands, even though she was the one, according to her testimony, who pulled him away from the fight. According to North, Terry Holt was punching at Francis's legs during the fight. She specifically testified that she saw Terry Holt, the older boy, using "punching down" motions, not slashing motions. Finally, Francis testified that White pulled her off her porch, by her hair, that White's kids were kicking and hitting her while she was being dragged around the yard, and that Terry Holt ran across behind her, and slashed her finger. These are significant discrepancies.
 {¶ 23} Perhaps most significantly, all three of Francis's witnesses testified that they saw no injuries inflicted upon White, either during or after the fight. Although it seemed to be Francis's theory that Terry Holt, White's ten-year-old boy inadvertently inflicted the injuries to his mother, while attempting to injure Francis, none of Francis's witnesses observed these serious injuries, or even any blood upon White, after the fight. This despite Johnson's assertion that she, as a nursing assistant, would surely have seen the injuries depicted in the photographs, had they existed immediately following the fight.
 {¶ 24} The DNA evidence admitted at trial established, beyond reasonable doubt, that the box cutter found near the area of the fight had White's blood upon its blade. This, together with the consistent testimony of the State's witnesses to the fight, would lead a reasonable jury to conclude, beyond reasonable doubt, that these serious injuries were inflicted during the course of the fight.
 {¶ 25} After considering all of the evidence presented by both parties, we find unremarkable the jury's decision to discredit the theory that White's ten-year-old son accidently inflicted the injuries to his mother, while attempting to injure Francis.
 {¶ 26} In short, we conclude that the jury did not lose its way, and that the judgment of the trial court is not against the manifest weight of the evidence. Francis's First Assignment of Error is overruled.
 III {¶ 27} Francis's Second Assignment of Error is as follows:
 {¶ 28} "The trial court erred in refusing to give an instruction on self-defense."
 {¶ 29} A person is entitled to use force to defend herself. Therefore, self-defense is an affirmative defense in prosecutions for homicide or assault. However, the force used must be reasonably necessary. See, State v. Williford (1990), 49 Ohio St.3d 247, first paragraph of syllabus. That case involved a defense based upon a belief that a family member was in imminent danger of death or serious bodily harm, but the opinion analogized that defense to the defense of self-defense.
 {¶ 30} For the use of force to be reasonably necessary to repel an attack, the force used must bear some reasonable relationship to the peril represented by the attack. Where the person attacked reasonably believes that she is in imminent danger of death or serious bodily harm, then the use of force reasonably calculated to produce serious physical harm would be justified, to the extent that it is reasonably necessary to repel the attack.
 {¶ 31} In the case before us, we conclude that no reasonable jury would have found that Francis's use of a box cutter to inflict the deep lacerations that were inflicted upon White was reasonably necessary to defend herself from White. Use of a lesser amount of force in her own defense might have been justified, but not use of the box cutter to have inflicted the serious injuries that were inflicted upon White. Thus, we conclude that the trial court did not err when it rejected Francis's request for a jury instruction on the defense of self-defense.
 {¶ 32} Francis's Second Assignment of Error is overruled.
 IV {¶ 33} Francis's Third Assignment of Error is as follows:
 {¶ 34} "The appellant's due process rights, her right to effective representation and, her Sixth Amendment right to confrontation were violated when the state lost critical evidence."
 {¶ 35} After a jury had been empaneled, but before any testimony had been taken, Francis moved for a mistrial and a judgment of acquittal, due to the fact that a failure of recording equipment in the Dayton Municipal Court resulted in the inability to obtain a transcript of the preliminary hearing testimony of the complaining witness. This motion was denied. In arguing in support of the motion, Francis's counsel contended that her ability to confront White, the complaining witness, was compromised by the fact that a transcript of White's preliminary hearing testimony was unavailable.
 {¶ 36} We agree with Francis that the right of confrontation includes the right to confront a witness for the State with a prior inconsistent statement. To do so requires discovery of the prior inconsistent statement, and proof of the prior inconsistent statement. Francis and her counsel were presumably present at the preliminary hearing, so that she and her counsel were aware of any inconsistent statements that White may have given in her testimony at the preliminary hearing. Thus, discovery is not a problem in this case.
 {¶ 37} Francis never explored alternative means of proving any prior inconsistent statements that White may have given. This could have included eliciting from White an admission that she had made a prior inconsistent statement, or a stipulation that a prior inconsistent statement was given, which would result in the trial court instructing the jury to regard the existence of the prior inconsistent statement as proven. In either event, Francis could then confront White with her prior inconsistent statement, through cross-examination. Francis did not seek either of these remedies, but requested instead a judgment of acquittal.
 {¶ 38} In our view, the trial court properly denied Francis's motion for judgment of acquittal. If we assume, for purposes of analysis, only, that the failure in the recording equipment is chargeable against the State, and that Francis had no alternative means of proving the existence of a prior inconsistent statement by White, the most relief to which Francis would have been entitled would have been the exclusion of White's testimony. That would not necessarily have resulted in a judgment of acquittal, since the testimony of Terry Holt and Ciera White, combined with other evidence in the case, would independently have permitted a reasonable fact finder to conclude, beyond reasonable doubt, that Francis caused serious physical harm to White.
 {¶ 39} Francis's Third Assignment of Error is overruled.
 V {¶ 40} Francis's Fourth Assignment of Error is as follows:
 {¶ 41} "The court erred in admitting non-probative cumulative and highly prejudicial material into evidence."
 {¶ 42} Francis objected to the admission in evidence of six photographs of White, taken at the hospital, depicting her injuries. She relies upon Evid.R. 403, which provides for the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice.
 {¶ 43} The State was required to prove that Francis caused serious physical harm to White. Although Francis does not dispute that the injuries depicted in the photographs constitute serious physical harm, she and her witnesses to the fight all disputed that White had sustained any serious injury by the end of the fight. Thus, the photographs were reasonably necessary to corroborate the testimony of the State's witnesses that White had sustained serious physical harm.
 {¶ 44} Furthermore, the essence of the State's case was circumstantial. Although no one saw the box cutter in Francis's hands, the State's theory was that Francis used the box cutter, during the fight, to inflict these injuries upon White. DNA testing proved that the blood on the blade of the box cutter was White's blood. The nature of the lacerations depicted in the photographs corroborates the State's theory that the box cutter was used to inflict these injuries.
 {¶ 45} We have reviewed the photographs, and we conclude that they are not unduly cumulative. White suffered injuries to her right arm, her right chin, her right ear, her chest, and apparently also to her forehead, from the top of her nose diagonally upward above her right eye. One photograph, State's Exhibit 12, shows the entire upper portion of White's body. Two photographs, State's Exhibits 7 and 8, show the lacerations to her right chin and ear. One photograph, State's Exhibit 9, shows a deep laceration in the upper portion of her right arm. The remaining photograph, State's Exhibit 11, shows a slight cut on her forehead.
 {¶ 46} We conclude that these photographs are not unduly cumulative, and that the trial court did not abuse its discretion in determining that their probative value outweighed any unfair prejudicial impact they might have upon the jury. Francis's Fourth Assignment of Error is overruled.
 VI {¶ 47} All of Francis's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and GRADY, JJ., concur.